# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:22-CR-201(1)** |
| v. | **JUDGE SARGUS** |
| **JEREMY C. MOONEY** | **Sentencing Memorandum of the United States** |

The United States hereby submits its Sentencing Memorandum with respect to Defendant Jeremy C. Mooney. Mr. Mooney has multiple objections, all of which should be overruled. For the reasons that follow, a sentence of 135 months of imprisonment and 3 years of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. The Court should also order Mr. Mooney detained under 18 U.S.C. § 3143(a).

## BACKGROUND

On October 19, 2022, a grand jury in this District returned an indictment charging Mr. Mooney with two counts of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242. (Indictment, R.3 at 3–4.) The Indictment alleged that Mr. Mooney and his codefendant, William Stansberry, Jr., committed civil rights crimes while they were employed as law-enforcement officers at the Pike County Sheriff's Office (PCSO). (*Id.* at 3–5.) In Count 1, the Indictment specifically alleged that Mr. Mooney repeatedly and unlawfully used OC pepper spray against an inmate in PCSO custody, resulting in bodily injury. (*Id.* at 4.) In Count 2, the Indictment alleged that Mr. Mooney punched the inmate multiple times, also resulting in bodily injury. (*Id.*) Mr. Mooney initially pleaded not guilty and was ordered released subject to certain conditions. (Release Order, R.15.)

Mr. Stansberry was charged in Count 3 of willfully failing to intervene while Mr. Mooney used pepper spray on the inmate. (Indictment, R.3 at 5.) He pleaded guilty and is scheduled to be sentenced on March 5, 2024.

On August 16, 2023, Mr. Mooney proceeded to trial. He testified in his own defense on the second and third days of trial. The jury found Mr. Mooney guilty as charged. (*See* Jury Verdict R.77.) The Court ordered that he remain on release pending sentencing.

The Probation Office released Mr. Mooney's Final Presentence Investigation Report on December 4, 2023. (PSR, R.87.) Sentencing is scheduled for March 14, 2024.

## ARGUMENT

The Probation Officer calculated that Mr. Mooney's Total Offense Level is 33 and that his Criminal History Category is I. PSR ¶¶ 45, 52. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges of 135 to 168 months of imprisonment, a fine of $35,000 to $350,000, and supervised release of 1 to 3 years. PSR ¶¶ 84, 89, 95. Mr. Mooney has multiple unresolved objections; the United States has none. The United States will first respond to the objections and then will turn to the statutory sentencing factors under 18 U.S.C. § 3553(a).

**I.    Mr. Mooney's objections should be overruled.**

On November 20, 2023, Mr. Mooney registered multiple objections in a letter. (*See* Defendant Objection Letter, R.87-1 at 728–30.) It is the United States' understanding that two of the factual objections have been resolved, leaving one factual objection and three legal objections.

Mr. Mooney's factual objection relates to the two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Specifically, he disputes the PSR's finding that the victim spat

2

on Mr. Mooney only before the final round of punches and not before the first or second round. Mr. Mooney next objects to the application of a four-level enhancement because a dangerous weapon was used in the offense. He also objects to the application of a two-level upward adjustment for obstruction of justice. Finally, he objects to the application of two-level upward adjustment because he knew or should have known that the victim was vulnerable. For the following reasons, all four objections should be overruled.

        A.        **The Presentence Investigation Report properly found that the victim spat on Mr. Mooney only before the final round of punches.**

In his only unresolved factual objection, Mr. Mooney objects to the PSR's finding that the victim—a person this Sentencing Memorandum will refer to as VICTIM A—did not spit on Mr. Mooney until after the second set of punches. This relates to the obstruction-of-justice enhancement. The United States agrees with the PSR's factual finding and agrees that, as a result, the enhancement should apply.

The PSR found that Mr. Mooney "made multiple false statements during his trial." PSR ¶ 21. First, it found that he falsely testified that he was instructed by Mr. Stansberry to pepper spray VICTIM A. *Id.* Notably, Mr. Mooney does not object to this factual finding. Second, the PSR found that Mr. Mooney falsely testified that VICTIM A spat on Mr. Mooney before each set of punches, when in fact he did not spit on Mr. Mooney until after the second set of punches. *Id.* Mr. Mooney disputes this finding. (*See* Defendant Objection Letter, R.83-1 at 728.)

Video evidence and Mr. Mooney's testimony establish that Mr. Mooney falsely testified that VICTIM A spat on him before both the first and second round of punches. Video shows that just before Mr. Mooney threw his first punch, VICTIM A brought his legs together around Mr. Mooney's hand. On cross-examination, Mr. Mooney testified without credibility that the reason he delivered the first set of punches was because VICTIM A spat on him, not because

3

VICTIM A brought his legs together. (*See* Tr., R.86 at 676–77.) The video does not show any actions that are consistent with spitting, such VICTIM A moving his head. Moreover, Mr. Mooney did not act like someone who had just been spat upon. He did not, for example, wipe away spit. The video shows (and Mr. Mooney admitted on cross-examination) that after Mr. Mooney delivered the first set of punches, he remained directly in front of VICTIM A for "at least 10 or 15 seconds." (*Id.* at 679.) His actions refute his claim that VICTIM A spat on him before the first round of punches.

Mr. Mooney also testified without credibility that the reason he delivered the second set of punches was because VICTIM A spat on him a second time, not because VICTIM A wiggled or moved his legs as Mr. Mooney attempted to restrain them. (*See id.* at 682–83.) The video is even clearer on this point because it shows the front of the victim and would have captured any spitting. Nothing on the video shows VICTIM A spit on Mr. Mooney. And again the video shows that after Mr. Mooney delivered the second set of punches, he remained directly in front of VICTIM A for approximately 15 or 20 seconds. Mr. Mooney did not wipe away any spit. His own actions prove that VICTIM A did not spit on him before the second round of punches.

In the final analysis, the video shows that Mr. Mooney committed perjury when he testified that VICTIM A spat on him before both the first and second round of punches. Paragraph 21 is correct, and the objection should be overruled.

    **B.**    **The Probation Officer properly applied a four-level enhancement because a dangerous weapon was used in the offense.**

The PSR applies a four-level enhancement because a dangerous weapon—namely, pepper spray—was used. U.S.S.G. § 2A2.2(b)(2)(B); PSR ¶¶ 29–30. Mr. Mooney contends that pepper spray is not a dangerous weapon. (Defendant Objection Letter, R.83-1 at 728–29.)

The U.S. Sentencing Guidelines provide that a defendant's offense level should be increased by four levels if "a dangerous weapon (including a firearm) was otherwise used." U.S.S.G. § 2A2.2(b)(2)(B). The application notes to that guideline provide that the term "dangerous weapon" "has the meaning given that term in § 1B1.1, Application Note 1." U.S.S.G. § 2A2.2 app. n. 1. Application Note 1(E) of § 1B1.1, in turn, defines "dangerous weapon" to include "an instrument capable of inflicting death or serious bodily injury." And the same application note defines "serious bodily injury" to include "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."

Under these definitions, pepper spray qualifies as a dangerous weapon. For starters, a jury specifically found beyond a reasonable doubt that the pepper spray in this case was a dangerous weapon. When Mr. Mooney went to trial, the verdict form for Count 1 (relating to the uses of pepper spray) asked, "Did the offense involve the use of a dangerous weapon?" (*See* Jury Verdict, R.77 at 485.) The jury unanimously answered, "Yes." (*Id.*) The jury's finding beyond a reasonable doubt that the pepper spray in this case was a dangerous weapon should be given strong weight.

Relevant case law also establishes that the objection should be overruled. In *United States v. Melton*, two defendants were convicted of carjacking after they removed a victim from the driver's seat of a Mercedes and drove away. 233 F. App'x 545, 545–46 (6th Cir. 2007). When officers recovered the car, they found a can of pepper spray. *Id.* at 546. One defendant told officers he planned to use the spray if the victim had resisted his demands, and the other defendant admitted he knew of the other defendant's plan to use the pepper spray. *Id.*

5

On plain-error review, the Sixth Circuit panel upheld the district court's finding at sentencing that the pepper spray was a "dangerous weapon." *Id.* at 547. The court of appeals did so based on the "severe and probable effects that pepper spray has on the human body," including extreme pain and impairment of the ability to see and breathe. *Id.* In that case as in this case, the court was considering the definition of "dangerous weapon" under the application note to U.S.S.G. § 1B1.1. The holding in *Melton* should control here.

When considering a different provision of the guidelines, the Sixth Circuit also concluded that "[p]epper spray not only has the potential to cause physical injury, but that is the very point of the device: It is *designed* to cause intense pain." *United States v. Mosley*, 635 F.3d 859, 861–62 (6th Cir. 2011) (internal quotation marks omitted). The court also noted that two other courts of appeals had held that pepper spray "satisfies the requirements of a dangerous weapon, because it is capable of inflicting death or serious bodily injury." *Id.* at 863 (internal quotation marks and citations omitted). Pepper spray is a dangerous weapon.

Mr. Mooney contends that the enhancement should not apply because the use of pepper spray did not "r[i]se to the level of serious bodily injury in this case." (Defendant Objection Letter, R.83-1 at 729.) As explained earlier, however, the question of whether an object is a dangerous weapon does not turn on whether it in fact inflicts death or serious bodily injury. Instead, an object is a dangerous weapon if it is "*capable of* inflicting death or serious bodily injury." U.S.S.G. § 2A2.2 app. n. 1(E) (emphasis added). For the reasons above, pepper spray is capable of doing so.

In light of the jury verdict and the case law, and because pepper spray is capable of inflicting serious bodily injury, the objection should be overruled.

### C. The Probation Officer properly applied a two-level upward adjustment for obstruction of justice.

The PSR applies a two-level upward adjustment because Mr. Mooney "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1; PSR ¶¶ 40–41. Application Note 4(B) to the guideline specifies that "the adjustment applies" to "committing . . . perjury." The adjustment is warranted here.

As described earlier in the discussion of Mr. Mooney's factual objection, the PSR found that Mr. Mooney perjured himself (1) when he falsely testified that he was instructed by Mr. Stansberry to pepper spray VICTIM A; and (2) when he falsely testified that VICTIM A spat on Mr. Mooney before each set of punches. PSR ¶¶ 40–41. Mr. Mooney's objection letter does not dispute the PSR's finding that he committed perjury regarding Mr. Stansberry's instructions. That unchallenged finding alone suffices to support the adjustment. As explained earlier, the videos also establish that Mr. Mooney committed perjury when he claimed that VICTIM A spat on him before both the first and second round of punches.

Mr. Mooney is wrong to suggest that the adjustment punishes him for exercising his constitutional right to a jury trial. (*See* Defendant Objection Letter, R.83-1 at 729.) It is his perjury, not his exercise of the trial right, that the adjustment targets. If Mr. Mooney had proceeded to trial and *not* offered false testimony, the adjustment would not apply. Instead, Mr. Mooney repeatedly lied under oath, and the PSR therefore correctly applies the two-level adjustment for obstruction of justice.

### D. The Probation Officer properly applied a two-level upward adjustment because VICTIM A was a vulnerable victim.

The PSR applies a two-level upward adjustment because Mr. Mooney "knew or should have known that the victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b); PSR ¶¶ 35–36. Application Note 2 to the guideline specifies that a victim of the offense is vulnerable when he is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." The PSR applies the adjustment due to VICTIM A's apparent mental-health condition. PSR ¶ 36.

Testimony at trial establishes that Mr. Mooney knew or should have known that VICTIM A was unusually vulnerable due to his mental condition. Start with Mr. Mooney's own words. He testified that he had received a briefing before he picked up VICTIM A from Butler County Jail that the inmate previously had been placed in the restraint chair, had bitten another deputy, and had been under the influence of drugs. (Tr., R.86 at 611–12.) Mr. Mooney testified that when he picked up VICTIM A from the Butler County Jail, Mr. Mooney "could very much tell that he was under the influence." (*Id.* at 614.) In Mr. Mooney's telling, he was "incoherent, cursing, erratic, threatening," and "laugh[ing] hysterically." (*Id.* at 615, 617.) Mr. Mooney testified that on the transport from Butler County Jail, VICTIM A "was not acting in any type of normal capacity" and that "his behavior was so erratic and almost unintelligible." (*Id.* at 613.) He was also banging his head against the van. (*Id.* at 619.) He was "having emotion[al] highs and lows" and was "very erratic." (*Id.* at 619–20.) In describing VICTIM A's behavior in the restraint chair at the Pike County Sheriff's Office, Mr. Mooney testified the following: "I don't know that I've ever encountered someone that was completely crazy, but just that type of mentality, just talking like we are now and then screaming, making threats, spitting, laughing, cursing, just a very maniacal type of behavior." (*Id.* at 625.) All of this establishes that Mr.

8

Mooney knew that the victim of his offenses was unusually vulnerable due to his mental condition.

In addition, other witnesses testified at trial that VICTIM A needed more assistance than the average inmate. In particular, the testimony of Deputy Adam Ball and EMT Lisa Kinnard established his vulnerability. The PSR is correct to apply the enhancement.

The Court should overrule all the objections and find that Mr. Mooney's Total Offense Level is 33 and that his guidelines imprisonment range is 135 to 168 months.

## II. Based on the statutory sentencing factors, the United States recommends a term of imprisonment of 135 months.

Turning to the § 3553(a) factors, the United States recommends a within-guidelines sentence of 135 months in prison and a 3-year term of supervised release. The Court should also order Mr. Mooney detained under 18 U.S.C. § 3143(a).

*Nature and circumstances of the offense.* Mr. Mooney repeatedly beat and pepper sprayed a restrained, helpless man in distress who was entrusted to his care. As the Court heard during the trial, VICTIM A was a person who Mr. Mooney transported to the PCSO headquarters en route to a court appearance after a weekend arrest. Mr. Mooney immediately secured VICTIM A in a "violent prisoner restraint chair" when they arrived at the PCSO. PSR ¶ 9. When used properly, the chair is a tool to secure uncontrollable inmates humanely and safely. *Id.* Mr. Mooney handcuffed VICTIM A's hands behind his back and strapped him into the chair, restricting most of his movement. *Id.*

Mr. Mooney proceeded to use unlawful force against VICTIM A repeatedly for more than an hour. PSR ¶ 10. Mr. Mooney dragged him outside while he was still in the restraint chair and left him there alone. *Id.* VICTIM A tipped the chair off the curb into the parking lot. PSR ¶ 11. Mr. Mooney and Mr. Stansberry came outside, and Mr. Mooney had a can of pepper spray

9

in his hand. *Id.* The two men tipped the chair back upright onto the sidewalk. *Id.* Mr. Mooney then stood directly in front of VICTIM A and, without justification, sprayed him directly in the face with pepper spray. PSR ¶¶ 10–11.

As a result of the pepper spray, VICTIM A writhed in pain and tipped the chair off the curb into the parking lot. PSR ¶ 12. Rather than helping him up, Mr. Mooney sprayed him in the face a second time—again without justification. *Id.* The PCSO policies governing use of pepper spray specify that "[n]o further use of force is to be applied against any inmate after being secured in the [restraint chair]," including "pepper spray." PSR ¶ 9. After some time, Mr. Mooney and two other officers got VICTIM A and the restraint chair upright and brought him inside. PSR ¶ 13.

When Mr. Mooney was alone with VICTIM A, Mr. Mooney punched him in the head and face eleven times. PSR ¶ 14. These eleven strikes came in three bursts, with Mr. Mooney walking away and returning to assault VICTIM A again. Mr. Mooney's eleven strikes spanned roughly three minutes. *Id.* At the time of the punches, VICTIM A was still handcuffed and secured in the restraint chair and was unable to protect himself. *Id.* Mr. Mooney stopped only because he had broken his own hand on the victim's face and needed to get medical attention himself. *Id.* Other deputies helped VICTIM A, who had suffered injuries and was transported to a local hospital. PSR ¶ 17.

Any violent crime involving a restrained victim is a serious offense. Mr. Mooney's offenses are even more serious given his position of public trust. He had an obligation to protect inmates in his custody. Instead, he physically abused the victim. The seriousness of his offenses warrants the recommended sentence.

*Need to afford adequate deterrence.* General deterrence is a particularly strong interest in this case, as it is whenever a law-enforcement officer is charged with a crime. This case has garnered substantial press attention, and members of law enforcement in Ohio will know what sentence the Court imposes. The United States seeks a sentence sufficient to dissuade other officers from following Mr. Mooney's example.

*Need to promote respect for the law.* Relatedly, the sentence should promote respect for the law by promoting public belief that government employees who willfully violate the constitutional rights of others will be appropriately punished. Whenever a member of law enforcement breaks the law, he damages the trust built by honest officers. His acts erode the trust of the public, of other officers, and of the rest of the legal system. That in turn makes it harder for law enforcement to do its important work. A guidelines sentence will reinforce the public's confidence that crimes like Mr. Mooney's—brazen assaults by an officer sworn to uphold the law—will be punished.

The need to promote respect for the law is particularly acute in this case. Mr. Mooney has not accepted responsibility for his actions, and in fact he obstructed justice by committing perjury. As explained earlier, Mr. Mooney "made multiple false statements during his trial." (PSR ¶ 21; *see* Tr., R.86 at 632, 637, 660, 682.) He has yet to show remorse for his assaults on a defenseless man in his care.

*Need to reflect the seriousness of the offense and provide just punishment.* A guidelines sentence is also appropriate considering the effects on VICTIM A. The Court heard at trial about his physical injuries. The PSR also details the severe mental anguish the victim has suffered as a result of the assaults. PSR ¶ 21. Within three months of the assaults, a state court appointed a legal guardian for him. Since the date of the offenses, he has seen a severe decline in his mental

health. *See id.* The aftermath of the crimes has also affected his family relationships. *See id.* Even four years after the assaults, VICTIM A is suffering the negative effects of what Mr. Mooney did. The sentence should provide just punishment for this harmful crime.

*History and characteristics of the defendant.* One of the most important aspects of Mr. Mooney's history is his status as a law-enforcement officer. PSR ¶ 76. Multiple courts of appeals have endorsed the view that crimes by officers are particularly serious. *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("A defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position."); *see also United States v. McQueen*, 727 F.3d 1144, 1157 (11th Cir. 2013) (vacating as substantively unreasonable a below-guidelines sentence in an excessive-force case in part because such a crime is a "particularly serious offense"); *United States v. LaVallee*, 439 F.3d 670, 708 (10th Cir. 2006) ("[I]n many instances, committing a crime while acting under color of law will result in a higher sentence—as it did in this case—rather than a lower sentence."). This is such a case. Because Mr. Mooney was a law-enforcement officer, he had a duty to protect the victim in this case and his culpability is greater.

Mr. Mooney's lack of a prior criminal record is not a mitigating fact in this case. The U.S. Sentencing Commission recently adopted a downward adjustment for certain offenders who had no criminal history points. *See* U.S.S.G. § 4C1.1. Mr. Mooney is excluded from that reduction for three reasons. The adjustment specifically excludes defendants, like Mr. Mooney, who "use violence . . . in connection with the offense." U.S.S.G. § 4C1.1(a)(3). It also does not apply to defendants whose convictions are "covered by U.S.S.G. § 2H1.1 (Offenses Involving Individual Rights)." U.S.S.G. § 4C1.1(a)(8). And it does not apply to defendants who "possess"

a "dangerous weapon . . . in connection with the offense." U.S.S.G. § 4C1.1(a)(7). These exclusions reflect a judgment by the Sentencing Commission that such offenders are uniquely culpable even when they lack any prior criminal record. For the same reasons that Mr. Mooney is excluded from the zero-point-offender adjustment, no downward variance is appropriate for his lack of prior record.

      At bottom, Mr. Mooney abused his power to repeatedly attack a restrained person entrusted to his care. In doing so, he used a dangerous weapon and caused physical and mental injury. Rather than acknowledging his wrongdoing, Mr. Mooney committed perjury. None of the statutory sentencing factors justifies a sentence below the guidelines range. Given the nature and circumstances of Mr. Mooney's offenses, his history and characteristics, the need for deterrence, and the other facts and circumstances of this case, the recommended sentence would satisfy 18 U.S.C. § 3553(a).

      Finally, the United States requests that the Court order Mr. Mooney detained at the conclusion of the sentencing hearing. Federal law provides that the Court "*shall* order" a defendant in Mr. Mooney's position "be detained, unless the judicial officer finds by clear and convincing evidence" that the defendant is not likely to flee or pose a danger to the community. 18 U.S.C. § 3143(a)(1) (emphasis added). Mr. Mooney committed a violent crime and lied on the stand. He has had time since trial to get his affairs in order. He should be detained.

## CONCLUSION

Mr. Mooney's objections should be overruled. For the above reasons, a sentence of 135 months of imprisonment and 3 years of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. The Court should also order Mr. Mooney detained under 18 U.S.C. § 3143(a).

**Respectfully submitted,**

KENNETH L. PARKER
United States Attorney


s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

s/Cameron A. Bell
CAMERON A. BELL
Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 1st day of March, 2024, electronically upon counsel for the Defendant.

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
